IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Zola Mae Beeks, | ) | Civil Action No  8:16-cv-02565-BHH-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Nancy A. Berryhill, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

_____

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

On September 1, 2011, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of January 1, 2011. [R. 309–15, 316–24.] The claims were denied initially on December 29, 2011 [R. 135–46, 147–57] and on reconsideration on March 1, 2012 [R. 162–75, 176–89] by the Social Security Administration ("the Administration"). Plaintiff requested a hearing before an administrative law judge ("ALJ") and on February 6, 2013, ALJ Alice Jordon conducted a de novo hearing on Plaintiff's claim. [R. 34–82.]

The ALJ issued a decision on March 15, 2013, finding Plaintiff not disabled. [R. 192–210.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through December 31, 2016, and had not engaged in substantial gainful activity since January 1, 2011, the alleged onset date. [R. 197, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: disc bulges at the C4-5 and C5-6 levels with some spondylosis, headaches, high blood pressure, degenerative disc disease, left knee pain, and obesity. [R. 197, Finding 3.] The ALJ also found Plaintiff had non-severe impairments of anxiety, depression, and post-traumatic stress disorder. [R. 198.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 198, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds claimant has the residual functional capacity to perform less than the full range of light, but more than sedentary work

_____

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> as defined in 20 CFR 404.1567(b) and 416.967(b). She could
> lift or carry up to 20 pounds occasionally and 10 pounds
> frequently. In an 8-hour workday, claimant could stand, walk, or
> sit up to 6 hours each with the ability to change positions.
> Claimant could climb step and ramps occasionally, but never
> ladders. She could crouch or kneel occasionally and balance,
> stoop or crawl frequently. Claimant could have frequent contact
> with the public; however, she is limited to performing unskilled
> tasks due to her headaches.

[R. 199, Finding 5.] Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff

was unable to perform any of her past relevant work as a hairstylist, personal care aid,

packer, and order picker/packer. [R. 202, Finding 6]. However, upon considering Plaintiff's

age, education, work experience, RFC, and the testimony of the vocational expert ("VE"),

the ALJ found that there were jobs that existed in significant numbers in the national

economy that Plaintiff could have performed. [R. 202, Finding 10.]

Plaintiff requested Appeals Council review of the ALJ's decision, and the Appeals

Council granted review under the substantial evidence provision of the Social Security

Administration regulations, vacated the prior decision, and remanded the matter to the ALJ

for resolution of the following issues:

- The Administrative Law Judge notes that Dr. Amir Agha completed a
  fibromyalgia medical questionnaire in August of 2012. Dr. Agha
  indicated claimant has at least 11 positive tender points bilaterally on
  the left and right side of her body (Exhibit 25F). He also completed a
  fibromyalgia residual functional capacity questionnaire (Exhibit 27F).
  Dr. Agha noted claimant experiences chest pain, fatigue, headaches,
  and insomnia. She also experiences multiple tender points,
  non-restorative sleep, morning stiffness with numbness and tingling,
  anxiety, and symptoms of depression. He opined claimant could lift or
  carry less than 10 pounds frequently, but never 10 pounds or more. In
  an 8-hour workday, claimant could sit, stand, or walk for less than 2
  hours. Dr. Agha indicated claimant would experience pain frequently
  and she would need a job that permits her to shift positions at-will from
  sitting, standing, or walking. Claimant would be absent from work more
  than 4 times a month (Exhibit 27F). While the decision addresses Dr.

Agha's opinion, it does not explain the weight given to such opinion evidence. Additionally, the Administrative Law Judge does not address whether the claimant's alleged fibromyalgia is a severe impairment. Therefore, further consideration is necessary.

- The Administrative Law Judge states the claimant uses a cane to assist with ambulation (Decision, Page 3). Further, in connection with the request for Appeals Council review, the claimant's treating physician Dr. Thaer A. Joudeh noted the claimant ambulates in his office with the assistance of a cane. The requirement to use a hand-held assistive device may impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling (See Appendix 1 to Subpart P of Part 404-Listing of Impairments, 1.00J).

[R. 212–13.] Upon remand, the ALJ was directed by the Appeals Council to:

- At step two, determine whether claimant's alleged fibromyalgia is a medically determinable impairment that is "severe" or a combination of impairments that is"severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521and416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p).

- Obtain additional evidence concerning whether the claimant's cane is medically necessary in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913). The additional evidence may include, if warranted and available, a consultative Orthopaedic examination and medical source statements about what the claimant can still do despite the impairment.

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p ). In so doing, evaluate the treating source opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request

the treating source to provide additional evidence and/or further clarification of the opinion (20 CFR 404.1512 and 416.912).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

[R. 213–14.]

In accordance with the remand order from the Appeals Council, Plaintiff appeared and testified before the ALJ at a subsequent hearing on October 1, 2014. [R. 83–132.] The ALJ issued a subsequent decision on November 25, 2014, finding Plaintiff not disabled. [R. 7–33.] At Step 1, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2016, and had not engaged in substantial gainful activity since January 1, 2011, the alleged onset date. [R. 13, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative joint disease in the left knee, degenerative disc disease of the cervical spine, lumbago, fibromyalgia, myalgia, depression and anxiety. [R. 14, Finding 3.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 17, Finding 4.] The ALJ specifically referenced consideration of Listings 1.04, 1.02, and 12.04/12.06/12.08. [R. 17–19.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following RFC:

> claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently. She can sit for up to 6 hours in an 8-hour workday and stand/walk for a combined 6 hours out of an 8-hour workday with the ability to change positions. The claimant cannot climb ladders. She can occasionally climb, crouch, kneel and stoop. She can frequently balance or crawl. She is limited to no more than occasional interaction with the public and no more than unskilled work due to chronic pain and other medications.

[R. 19, Finding 5.] Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff was unable to perform any of her past relevant work as a hairstylist, home health aide, or inspector. [R. 23, Finding 6]. However, upon considering Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed. [R. 24, Finding 10.] Accordingly, the ALJ found Plaintiff had not been under a disability, as defined in the Act, from January 1, 2011, through the date of this decision. [R. 25, Finding 11.] Plaintiff filed the instant request for review in this Court on July 18, 2016. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and contains multiple legal errors warranting the reversal and remand of the case. [*See* Doc. 15.][4] Specifically, Plaintiff contends the ALJ failed to include Plaintiff's moderate limitations

---

[4]Plaintiff also filed a Reply brief at [Doc. 17] which reiterates her arguments outlined in the initial briefing.

in concentration, persistence and pace to the VE and, thus, provided an improper hypothetical to the VE for consideration. [Doc. 15 at 24–26.] Plaintiff also argues that the ALJ's RFC discussion contains inaccuracies precluding the RFC from being supported by substantial evidence [*id*. at 26–29] ; and that the ALJ improperly rejected the opinion of Plaintiff's treating rheumatologist, Dr. Agha [*id*. at 29–35].

The Commissioner contends the ALJ's decision should be affirmed because there is substantial evidence of record that Plaintiff was not disabled within the meaning of the Act. [*See* Doc. 16.] Specifically, the Commissioner contends the ALJ complied with the remand order in considering Plaintiff's fibromyalgia diagnosis, in weighing the opinion of Dr. Agha, and in considering the medical necessity for her use of a cane. [*Id*. at 13– 16.] The Commissioner also contends the ALJ properly determined Plaintiff's RFC [*id*. at 16–19], and also complied with the Appeals Council's remand order in obtaining testimony from the VE to "clarify the effect of the assessed limitations on the claimant's occupational base" [*id*. at 19–20.]

Plaintiff points out in her Reply, the Commissioner did not address her *Mascio* argument. [Doc. 17 at 2.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,*

611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light*

*Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g);

*Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact.  *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

## A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

## B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined

13

impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.   *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]   20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.   *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.   *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ

must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the

ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V. Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds

that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

> objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.  Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**RFC and the Hypothetical to the VE**

Plaintiff contends the ALJ's RFC analysis is flawed because she failed to indicate how she reconciled her RFC findings with the accepted medical opinions leaving the Court to guess about how she arrived at her conclusions. [Doc. 15 at 29.] Specifically, Plaintiff challenges the ALJ's consideration of the medical necessity of a cane for ambulation and the affect of such use on her ability to use her upper extremities. [*Id*. at 28.] Additionally, Plaintiff challenges the ALJ's failure to include Plaintiff's moderate limitations in concentration, persistence, or pace in her hypothetical to the VE which necessarily implicates the ALJ's RFC determination. [*See id*. at 25 ("And when the ALJ presented his RFC finding to the vocational expert, he failed to include [Plaintiff's] moderate limitation in concentration, persistence or pace."]

The Commissioner argues the ALJ considered Plaintiff's use of cane [Doc. 16 at 16] and provided a very thorough discussion of the evidence supporting her finding that Plaintiff retained the RFC to perform a limited range of unskilled, light work, reduced by the need for a sit/stand option and no more than occasional contact with the public [*id*. at 19]. The

Commissioner does not address or challenge Plaintiff's arguments directed to the application of *Mascio*.

Upon review, the Court finds the ALJ's RFC determination is not supported by substantial evidence and reliance on the VE's testimony was error given that the hypothetical did not account for the moderate limitation in concentration, persistence and pace.

**Discussion**

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule....

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium,

heavy, and very heavy. *Id.* Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i .e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC....

*Id.* at 34,476.

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477. SSR 96–8p specifically states, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted ." *Id.* at 34,478. Thus, an ALJ's RFC assessment will necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant.

In formulating Plaintiff's RFC, the ALJ discussed the mental disorder listing standards and found Plaintiff had moderate restrictions in social functioning and concentration, persistence, and pace, although she also noted that the state agency consultants found Plaintiff to have no more than mild limitations in these domains. [R. 18.] And, while the ALJ is well within her authority to reject the findings of the state agency consultants on this issue, the ALJ is, however, obligated to clearly explain, for purposes of review, her

consideration of Plaintiff's moderate limitations in concentration, persistence, and pace in developing the RFC.

In *Mascio v. Colvin*, the Fourth Circuit found that "the ability to perform simple tasks differs from the ability to stay on task" and that "only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." 780 F.3d 632, 638 (4th Cir. 2015).[9] The *Mascio* Court found it reversible error that the ALJ did not explain her consideration of Plaintiff's limitations in concentration in the RFC or present the limitation to VE in a hypothetical, opining that

> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

*Mascio*, 780 F.3d at 638 (internal citation omitted). Following *Mascio*, several cases in this district and in other districts within the Fourth Circuit have found that a limitation to simple, unskilled work is insufficient to address moderate limitations in concentration, persistence, and pace absent further explanation. *See Herren v. Colvin*, No. 1:15-cv-00002-MOC, 2015

---

[9]In *Mascio v. Colvin*, the claimant asserted that the hypothetical to the VE was legally insufficient in failing to include her mental limitations. At step three, the ALJ had found that *Mascio* had an adjustment disorder and also that she had moderate difficulties with concentration, persistence, or pace as a side effect of her pain medication. However, the ALJ did not include in his hypothetical to the VE any mention of the mental limitations. The court agreed with other circuits that have held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.' 780 F.3d 632, 683 (4th Cir.2015), *citing Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir.2011) as joining the Third, Seventh, and Eighth Circuits.

WL 5725903, at *6 (W.D.N.C. Sept. 30, 2015) (finding a hypothetical containing a restriction to "simple, routine, repetitive tasks" failed to address the claimant's ability to stay on task); *Desilets v. Colvin*, No. 2:14-cv-1693-RBH, 2015 WL 5691514, at *4–5 (D.S.C. Sept. 28, 2015) (finding a limitation in the RFC to "simple, repetitive tasks that are low stress and require no major decision-making or changes in the work setting in crediting some of her complaints of increased mental symptoms with stress" did not "sufficiently address the claimant's limitations in concentration, persistence, or pace as they relate to the RFC"); *Jones v. Colvin*, No. 4:14-cv-200-RN, 2015 WL 4773542, at *6 (E.D.N.C. Aug. 13, 2015) ("[T]he hypothetical question to the VE contemplated an individual 'limited to simple, routine, repetitive tasks; should work in a low production occupation, one which would require no complex decision making, constant change or dealing with crisis situations.' The majority of courts in North Carolina, including this court, have held that such restrictions do not adequately address a claimant's moderate limitations in concentration, persistence and pace."); *Bailey v. Colvin*, No. 5:14-cv-248-DCN, 2015 WL 2449044, at *13 (D.S.C. May 21, 2015) (finding a limitation in the RFC to "only simple, routine, repetitive tasks; he must work in a static work environment (which I define as an environment with few work place changes)" did not account for the claimant's "limitations in concentration, persistence, or pace as to his ability to *stay on task*") (emphasis in original); *Scruggs v. Colvin*, No. 3:14-cv-00466-MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (finding that an ability to perform simple, routine, repetitive tasks in a nonproduction environment, without more, does not account for claimant's moderate difficulties in concentration, persistence, and pace); *cf. Falls v. Colvin*, 8:14-cv-00195-RBH, 2015 WL 5797751, at *7 (D.S.C. Sept. 29, 2015)

(finding remand was not required because the ALJ adequately addressed claimant's ability to stay on task by including the limitation "she could concentrate, persist, and work at pace to do simple, routine, repetitive tasks at one and two step instructions for extended periods, say two hour periods in an eight hour day").

In this case, the ALJ failed to explain how a limitation to unskilled work accommodates Plaintiff's moderate mental limitations.  Thus, the Court is unable to conclude that the ALJ sufficiently accounted for Plaintiff's moderate limitations in concentration, persistence or pace in the RFC.  Also, as in *Mascio*, the ALJ's hypothetical to the VE in this case did not mention Plaintiff's mental limitations and merely limited Plaintiff to unskilled work due to the complaints of pain and her medications.  [*See* R. 123–125.]  And, while the limitation to unskilled work somewhat may address Plaintiff's mental limitations, after *Mascio*, further explanation and/or consideration by the ALJ is necessary.

Additionally, from a review of the ALJ's decision, it is unclear whether the ALJ considered all of the evidence of record in assessing Plaintiff's RFC.  As Plaintiff argues, the ALJ did not adequately explain how she reconciled certain medical opinions of record with her RFC findings.  For instance, it is unclear how the ALJ weighed the evidence from Plaintiff's treating rheumatologist, Dr Agha, and Plaintiff's own hearing testimony, with respect to the extent of her limitations due to pain from her fibromyalgia.  The ALJ provides very little discussion, if any, of the evidence provided by Plaintiff's testimony regarding her limitations. *See Morgan v. Barnhart*, 142 F. App'x 716, 720 (4th Cir. 2005) (*citing* 20 C.F.R. § 404.1529(c)(3)["[T]he ALJ must consider the relevant medical evidence and other evidence of the claimant's condition in the record, including testimony from the claimant and

26

family members."]).    To the contrary, the ALJ does not specifically mention her consideration of the credibility of Plaintiff's testimony regarding her limitations due to pain.

Furthermore, the Court notes that SSR 12-2p explains how fibromyalgia, which the ALJ in this case found to be a severe impairment, should be evaluated in disability claims, and it explains that fibromyalgia is "a 'complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months.'" *See Smith v. Colvin*, C/A No. 1:14-4400-RBH, 2016 WL 1089302, at *5 (D.S.C. March 21, 2016).  SSR 12-2p provides that fibromyalgia should be considered in the RFC based on a longitudinal record whenever possible because symptoms can wax and wane such that a person may have "bad days and good days." *Id*.   Courts have recognized that fibromyalgia symptoms are entirely subjective, there is no laboratory test to confirm the presence or severity of it, physical examinations usually yield normal results such as a full range of motion, no joint swelling, normal muscle strength and neurological reactions.   *Id*. at *7.   And, the nature of fibromyalgia is that a person's ability to perform certain tasks or postural maneuvers on one day does not necessarily reflect an ability to perform those on a sustained basis. *Id.*  However, as this Court noted in *Smith*, because fibromyalgia symptoms may be entirely subjective the ALJ should have explained how she factored fibromyalgia subjective pain and fatigue into the RFC determination.  In *Smith*, the ALJ relied exclusively on objective medical evidence to evaluate *Smith's* fibromyalgia as it related to her RFC, and the Court found that the ALJ failed to account for the subjective nature of fibromyalgia and it could not deduce whether the subjective complaints of

fibromyalgia pain were considered in determining the RFC.  *See id.*  That is precisely what happened with this ALJ's decision, and such was error.

While the ALJ, contrary to the procedure outlined in SSR 12-2p, painstakingly discredits the physical limitations imposed on Plaintiff by Dr. Agha based on objective data in the record [R. 22–23], the ALJ failed to explain her consideration of Dr. Agha's opinion that Plaintiff frequently experiences pain severe enough to interfere with her attention and concentration, and would cause her to miss work more than four time a month.  [R. 770.] These limitations, likewise, were not presented to the VE for consideration.  However, because pain is not readily susceptible of objective proof, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative. SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator *must* consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *See* SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996); *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2)(outlining evaluation of pain). Accordingly, in light of the above, the Court cannot find the ALJ's RFC determination is supported by substantial evidence.

**Additional Allegations of Error**

This Court finds that remand is required due to the ALJ's failure to properly address Plaintiff's moderate limitations in concentration, persistence, and pace in the hypothetical to the VE and because the RFC determination is not supported by substantial evidence. Thus, the Court declines to address Plaintiff's remaining allegations of error.  On remand,

however, the ALJ is to take into consideration Plaintiff's contention that the ALJ failed to adequately explain her dismissal of Plaintiff's need for a cane to ambulate, as well as the weight assigned to the opinion of Plaintiff's treating rheumatologist.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case is REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**.


s/Jacquelyn D. Austin
United States Magistrate Judge

September 1, 2017
Greenville, South Carolina